# EXHIBIT B

# MESSINA LAW FIRM
A Professional Corporation

**Gil D. Messina**
Admitted in MA and NJ

Email: gmessina@messinalawfirm.com

961 Holmdel Road
Holmdel, New Jersey  07733
_____

Phone 732.332.9300
Fax 732.332.9301

April 24, 2019

Honorable Sean H. Lane, U.S.B.J.                                    **Via Email**
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

      Re:    *Carolyn Fjord, et al. v. AMR Corporation, et al.*
             Adversary Proceeding No. 13-01392 (SHL)

Dear Judge Lane:

      In paragraphs 436, 437 and 444 of the Plaintiffs' Proposed Findings of Fact and Conclusions of law on pages 77 and 78, are references to plaintiffs' exhibit PX-96.  Since PX-96 and defendants' exhibit DX-050 are the same document, the plaintiffs had removed PX-96 from their designated trial exhibits.  Therefore, the references to PX-96 should instead be to DX-050.  Attached are erratas for pages 77 and 78 of Plaintiffs' Proposed Findings of Fact and Conclusions of Law correcting those references.

      Thank you for Your Honor's attention.

                                              Respectfully yours,

                                              *s/ Gil D. Messina*
                                              Gil D. Messina

GDM/hs
Attachments - errata pages 77 and 78

cc:      Counsel of Record, via email

435.     Mergers can pose a real danger of harm through coordinated effects, even without specific evidence showing precisely how the coordination likely would take place. (PX-148 (Merger Guidelines § 7.1) p.28 of 37).

436.     By reducing the number of legacy airlines and aligning the economic incentives of those that remain, the merger has made it easier for the remaining legacy airlines to cooperate, rather than compete, on price and service. (DX-050 (DOJ Competitive Impact Statement) p.6 of 21).

437.     Absent the merger, US Airways and American, as independent competitors, would have had unique incentives to disrupt coordination that already occurs to some degree among the legacy carriers (DX-050 (DOJ Competitive Impact Statement) p.6 of 21), leading to the reasonable conclusion that the ability to coordinate after the merger Amay tend to make success more likely." (PX-148 (Merger Guidelines § 7.2) p.28 of 37).

438.     Market conditions are presumed to be conducive to coordinated interaction if firms representing a substantial share in the relevant market appear to have previously engaged in express collusion affecting the relevant market, unless competitive conditions in the market have since changed significantly. (PX-148 (Merger Guidelines § 7.2) p.28 of 37). Here, the most significant change in the relevant markets has increased the likelihood of coordinated interaction by eliminating one of four remaining legacy network airlines.

439.     Previous express collusion in another geographic market will have the same weight if the salient characteristics of that other market at the time of the collusion are comparable to those in the relevant market. Failed previous attempts at collusion in the relevant market suggest that successful collusion was difficult pre-merger but not so difficult as to deter

attempts, and a merger may tend to make success more likely.  (PX-148 (Merger Guidelines §7.2) p.28 of 37).

440. ATPCO is the Airline Tariff Publishing Company which is, according to Dr. Ordover, Aa receptacle of fare data from the participating airlines and which aggregates the fare data and disseminates it down to a lot of recipients, including GDSs.  (Trial Tr. 1175:11-17, Ordover).

441. In his written direct testimony, Dr. Ordover identified ATPCO's role in publishing airlines' fares.  AFirst, airlines file their fare structures in the [ATPCO] system. These fare structures list possible fares on each route and the rules and restrictions that apply to different types of tickets.  (Ordover Dir. Ex. p.10, & 28).

442. Among the legacy carriers, fares are not opaque as claimed by Dr. Ordover. (Ordover Dir. Ex. p.9, & 25).  Instead, according to AMR's CEO, Thomas Horton, a carrier's pricing is readily transparent to other carriers due to a vast array of online sources of visible fares.  (Horton Depo. (9/20/13) 179:4-11).

443. According to US Airways president Scott Kirby, with the exception of off-tariff programs such as corporate discounts and wholesale programs, like fares given to Priceline (Kirby Depo. (10/10/13) 44:19-45:6), fares and fare changes are transparent to domestic air carriers and are quickly matched.  (Kirby Depo. (10/10/13) 48:9-49:19).

444. Coordination occurred among the legacy carriers before the merger (DX-050 (DOJ Competitive Impact Statement p.6)) and following the merger. The three remaining network airlines, American, Delta and United, in March 2016, coordinated the change in ATPCO's pricing rules by changing its Category-10 airfare pricing rules simultaneously, thereby raising airfares to consumers flying on multi-city itineraries.  (PX-125, PX-108, PX-109).